UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KIM L. TAFOLLA,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     17-CV-4897(JS)(AKT)

COUNTY OF SUFFOLK; EDWARD HEILIG; and
JOSEPH CARROLL,

                    Defendants.
----------------------------------X
APPEARANCES

For Plaintiff:          Joshua Friedman, Esq.
                        Joseph Myers, Esq.
                        Phillips & Associates PLLC
                        585 Stewart Avenue, Suite 410
                        Garden City, New York 11530

For Defendants:         Hope Senzer Gabor, Esq.
                        Assistant County Attorney
                        Suffolk County Department of Law
                        H. Lee Dennison Building
                        100 Veterans Memorial Highway
                        Hauppauge, New York 11788

SEYBERT, District Judge:

        Plaintiff Kim L. Tafolla ("Plaintiff") initiated this

employment discrimination action against the County of Suffolk

(the "County"), Edward Heilig, and Joseph Carroll (collectively,

"Defendants") asserting violations of the Americans with

Disabilities Act ("ADA") and 42 U.S.C. § 1983 ("Section 1983")

arising out of her termination as a County employee.  Currently

pending before the Court is Defendants' motion for summary

judgment.  (Defs. Mot., ECF No. 70; Defs. Br., ECF No. 72; Pl.

1

Opp., ECF No. 74; Defs. Reply, ECF No. 77.)  For the following reasons, Defendants' motion is GRANTED.

FACTUAL BACKGROUND[1]

The following facts, unless otherwise noted, are undisputed.

## I.   The Parties

Plaintiff worked as a "clerk typist" at the Suffolk County District Attorney's Office (the "Office") from November 17, 2008 until January 13, 2015.  (Plaintiff's Response to Defendants' Local Rule 56.1 Statement ("Pl. 56.1 Resp."), ECF No. 61-2, ¶¶ 1, 144.)  Starting in March 2009, she worked in the Office's Special Investigations Bureau (the "Bureau"), initially under then-Bureau Chief, Defendant Edward Heilig ("Heilig").  (Id. ¶¶ 2, 6.)  At some point Heilig became Division Chief, and Defendant Joseph Carroll ("Carroll") took over as Bureau Chief.  (Id. ¶¶ 9-11.)  As Division Chief, Heilig oversaw personnel matters at the Office, and Carroll reported to Heilig regarding personnel-related matters within the Bureau. (Id. ¶¶ 12, 24.)  There is some dispute between the parties regarding the process for requesting an accommodation in the Bureau -- whether through Heilig, Carroll, or Jennifer

---

[1] Unless otherwise noted, the facts are drawn from the parties' respective Local Rule 56.1 Statements and Responses.  The Court cites to the parties' 56.1 responses, which are the most complete.

McNamara, the County's Director of Labor Relations -- and who had responsibility to grant an accommodation.  (Id. ¶¶ 23-28.)

II.  Plaintiff's Archiving Responsibilities

Plaintiff and two other women, Jennifer Greenzang and Tara Sikorski, served as clerk typists in the Bureau during the relevant period, though Sikorski left on June 24, 2013.  (Id. ¶ 34.)  Most of Plaintiff's responsibilities as a clerk typist are not in dispute.  Plaintiff performed "general office duties," such as: answering the telephone; typing memos, correspondence, writs, and indictments; and photocopying and scanning documents.  (Id. ¶ 33.)  At issue are Plaintiff's archiving responsibilities and her request for an accommodation related thereto.

Once a defendant was sentenced and the case was closed, it was archived.  The archiving process in the Bureau was as follows: the responsible assistant district attorney ("Assistant DA") would leave the case file, contained in an "indictment folder," in a "suite area" (id. ¶¶ 49-51); then, Plaintiff or one of her colleagues would "close out" the case file by entering the requisite information from the file into the Office's system (id. ¶¶ 50, 57); after which, the case file would be brought downstairs to the archives room, which neither Plaintiff nor her colleagues were required to do (id. ¶ 50).  According to Plaintiff, "archiving was a small portion of [her] job," (Defendants' Response to Plaintiff's Local Rule 56.1 Statement ("Defs. 56.1 Resp."), ECF

No. 61-3, ¶ 6), which "always came last" or "when you had free time." (Pl. Depo. Tr. 63:8-9, Ex. A, ECF No. 73-1, <u>attached to</u> Friedman Decl.; <u>see also</u> Horney Depo. Tr. 38:12-15, Ex. C, ECF No. 73-3, <u>attached to</u> Friedman Decl.)[2] Plaintiff claims Diana Laruche, a Bureau secretary, "did the majority of archiving." (Defs. 56.1 Resp. ¶ 5.)

III. <u>Plaintiff's First Request for an Accommodation</u>

On November 25, 2013, Plaintiff suffered injuries to her cervical and lumbar spine due to a car accident. (Defs. 56.1 Resp. ¶¶ 10-11.) The following day, Plaintiff informed Carroll that she would be unable to come into work. (Pl. 56.1 Resp. ¶ 61.) When she returned to work on December 2, after the Thanksgiving weekend, Plaintiff found the case files ready for archiving were piling up. (<u>Id.</u> ¶¶ 61-62.) After an Assistant DA asked Plaintiff when the files would be archived, Plaintiff resolved to communicate to Carroll that she was unable to perform her archiving duties. (<u>Id.</u> ¶¶ 64-65.)

On December 6, 2013, Plaintiff emailed Carroll regarding her concerns about archiving files. (<u>Id.</u> ¶ 67.) Plaintiff explained that her neck, back, and ribs were sore from the car accident and asked whether "Jen [Greenzang] could take care of the archives for now." (First Accommodation Request, Ex. E, ECF No.

---

[2] Hereafter, the Court will simply cite to the relevant exhibits from the Friedman Declaration by their identified letters.

73-5, <u>attached to</u> Friedman Decl.)   Before responding, Carroll conferred with Heilig regarding Plaintiff's request.   (Pl. 56.1 Resp. ¶ 68.)   Based on his consultation with Heilig, Carroll told Plaintiff "I don't want you to hurt yourself," and recommended they wait to learn what Plaintiff's doctor recommended at her visit, scheduled for three days later.   (First Accommodation Request, Ex. E.)   Carroll added: "If your doctor deems that you are unable to perform any work related functions please have him/her provide you with a letter indicating the nature of those restrictions."   (Id.)   He also requested a copy of the "DMV 104 accident report."   (Id.)

On December 9, 2013, Plaintiff saw Eugene King, the physician's assistant at her spine surgeon's office, and obtained a note from him (the "King Note").   (Pl. 56.1 Resp. ¶ 74.)   The King Note stated Plaintiff should not lift over five pounds or perform "bending [or] pushing activities."   (Id.; see also King Note, Ex. F, ECF No. 73-6, attached to Friedman Decl.)   Plaintiff left a copy of the King Note in Carroll's inbox on December 10, 2013.   (Pl. 56.1 Resp. ¶ 75.)   A few days later, Carroll emailed Plaintiff to request a list of cases that had been sent to archives from June 24, 2013 -- the day Sikorski left -- through December 13, 2013 to "gain an understanding of the nature of how much work was involved in archiving since Tara Sikorski left."   (Id. ¶ 77.)   Carroll's request was in response to the First Accommodation

Request, which requested Greenzang relieve Plaintiff of her archiving duties, since Carroll "wanted to have some idea of what [such an accommodation would] entail[]." (Id. ¶ 79.)

## IV.  The January 7 Encounter

From November 21, 2013 to January 7, 2014, no archiving was done in the Bureau. (Id. ¶ 80.)  As a result, Carroll, believing Plaintiff should have been archiving case files that weighed less than five pounds, consistent with the King Note, approached Plaintiff to address the backlog. (Id. ¶ 81.)  The parties dispute what happened next.  According to Plaintiff, Carroll and another Assistant DA, Deirdre Horney, "approached Plaintiff in a hostile manner" and demanded why the files were not getting archived. (Defs. 56.1 Resp. ¶ 25.)  When Plaintiff raised the King Note, Carroll acknowledged its limitations but yelled over her, picked up a file from Plaintiff's desk, and stated, "I don't think this file weighs five pounds." (Id. ¶ 28.)  Plaintiff claims Carroll "told her to put the box [of case files] on the floor, bend over to pick up the files, enter the information into the computer, from a sitting position, and put the files in the box," at which point he or someone else would move the boxes for Plaintiff. (Id. ¶ 31.)  Plaintiff further claims Carroll gave her an ultimatum: archive or go on medical leave. (Id. ¶ 29.)  Conversely, Defendants claim that throughout the exchange Carroll acted consistent with the King Note and instructed Plaintiff not

to handle any file that weighed more than five pounds.  (Id. ¶¶ 28-31; Pl. 56.1 Resp. ¶ 82.)  According to Defendants, Carroll's "ultimatum" was a good faith offer to transfer an "unhappy" employee. (Pl. 56.1 Resp. ¶ 83.)  He also offered to have Greenzang assist Plaintiff with the archives, which she did.  (Id. ¶ 84.)

After the exchange, Plaintiff archived two boxes of case files.  (Id. ¶ 85.)  "By the end of the day, Plaintiff was in such excruciating pain and severe agony that she could barely walk to her car."  (Defs. 56.1 Resp. ¶ 38.)  Because of the pain, she called out of work the following day and scheduled an appointment with her spine surgeon, Dr. Robert Galler.  (Id. ¶¶ 39-40.)  At her visit, Dr. Galler provided Plaintiff a second note regarding her physical limitations.  (Second Accommodation Request (attaching Galler Note), Ex. G, ECF No. 73-7, attached to Friedman Decl.)  The Galler Note stated that due to Plaintiff's previous surgery and the injuries she sustained from the November 2013 car accident, Plaintiff was "unable to lift, bend, twist, or push any object over five pounds.  The patient is able to perform secretarial work but no physical duties at this time . . . ." (Id.)[3]

---

[3] Plaintiff also filed a workplace violence complaint in connection with the January 7 interaction with Carroll, which Heilig, pursuant to the Suffolk County Workplace Violence Prevention Program's procedures and in consultation with the Office's workplace violence coordinator, determined was not a proper workplace violence complaint.  (Defs. 56.1 Resp. ¶¶ 122-34.)

V.    <u>Plaintiff's Second Request for Accommodation</u>

One week after her exchange with Carroll, Plaintiff renewed her request for an accommodation with the Office's human resources department (the "Second Accommodation Request"). Diane Stankewicz, a human resources representative, called Plaintiff shortly thereafter and informed her that the County "did not offer light duty assignments" and that Carroll was responsible for accommodating her disability. (Pl. 56.1 Resp. ¶ 95.) Plaintiff also reached out to Caroline Stolz from "Risk Management," who reiterated Stankewicz's response. (<u>Id.</u> ¶ 107.) It appears that Stankewicz's and Stolz's responses were inconsistent with County policy. (<u>Id.</u> ¶¶ 95, 107; <u>see also</u> Defs. 56.1 Resp. ¶¶ 47-54.) Notwithstanding the miscommunication, however, on January 16, 2014, two days after the Second Accommodation Request, Heilig responded to Plaintiff via an intraoffice communication. (Heilig Memo, Ex. H, ECF No. 73-8, <u>attached to</u> Friedman Decl.) Heilig stated it was his understanding that Plaintiff already had been granted an accommodation based on the King Note. (<u>Id.</u>) He further advised Plaintiff that she was "not to 'lift, bend, twist or push any object over five pounds'" in connection with her responsibilities, and that if she believed any file weighed more than five pounds, she was "not to touch that file," but rather advise Carroll, who would make alternative arrangements. (<u>Id.</u>) The Heilig Memo closed with the following paragraph:

> Please be further advised that the county does
> not have light duty assignments.  If you are
> not capable of performing your job duties for
> any reason, including medical limitations, you
> will have to be out of work on a medical leave
> until you can return to work with a Doctor's
> note indicating that you can work with no
> restrictions.

(Id.)

Plaintiff claims Defendants acted inconsistently with the Heilig Memo, and in any event "disputes that this was not a reasonable accommodation because light duty was not possibly [sic] per Defendant's policy."  (Pl. 56.1 Resp. ¶ 108.)  According to Defendants, by the final paragraph, Heilig intended to communicate that, in the event Plaintiff could not perform her job duties even with the accommodation, she would have to go on medical leave. (Id.)  Regardless, by the time Plaintiff received the Heilig Memo on January 16 it was a moot point, because Plaintiff had left the Bureau on January 15 with "no intention of going back to work." (Id. ¶¶ 110-11.)  After Plaintiff left, Carroll weighed the files that Plaintiff had archived on January 7 and confirmed that "none of the files that Plaintiff archived weighed over five pounds." (Id. ¶ 121.)

VI.   Plaintiff's Leave and Eventual Termination

On February 27, 2014, Plaintiff applied for and was granted twelve-week leave under the Family Medical Leave Act.  (Id. ¶¶ 134-36.)  In addition, Plaintiff applied for and was granted

Long Term Disability benefits for 104 weeks, running through April 12, 2016.  (Id. ¶ 137.)  Via a January 13, 2015 letter, Heilig informed Plaintiff that her employment would be terminated pursuant to New York Civil Service Law § 73, due to her one-year absence from the County.  (Id. ¶ 144.)  At that point, Plaintiff declined to undergo a medical examination to determine whether she could perform her responsibilities as a clerk typist, a decision she blames on Defendants for instructing Plaintiff she "must be out of [sic] disability despite Plaintiff could perform her sedentary tasks."  (Id. ¶ 146.)

<u>PROCEDURAL HISTORY</u>

Plaintiff initiated this action on August 21, 2017, within ninety days of receiving a notice of right to sue from the Equal Employment Opportunities Commission.  In the operative Amended Complaint, filed on January 22, 2018, Plaintiff alleges three causes of action arising under federal law: (1) violation of 42 U.S.C. § 1983; (2) discrimination under the ADA; and (3) retaliation under the ADA; she also alleges three causes of action for violations of the New York State Human Rights Law ("NYSHRL").  (Am. Compl., ECF No. 15.)  At the close of discovery, Defendants moved for summary judgment.

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). The movant bears the burden of establishing that there are no genuine issues of material fact for trial. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). There can be no genuine issue as to any material fact where "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant shows there are no genuine issues of material fact for trial, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 41 (2d Cir. 2006) (quoting FED. R. CIV. P. 56(e)).

On a motion for summary judgment the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).  In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).  When drawing inferences from evidence in the record in favor of the non-moving party, however, a court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts."  Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1318 (2d Cir. 1990)).  Moreover, "[t]hough [a court] must accept as true the allegations of the party defending against the summary judgment motion, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wyler v. United States, 725 F.2d 156,

160 (2d Cir. 1983)); accord Hicks v. Baines, 593 F.3d 159, 166 (2d

Cir. 2010).

II.   Analysis

   A.   ADA Discrimination[4]

      1.   Applicable Law

         Under   the   ADA,   employers   are   prohibited   from

"discriminat[ing] against a qualified individual on the basis of

disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job

training,   and   other   terms,   conditions,   and   privileges   of

employment."   42 U.S.C. § 12112(a).   The ADA requires an employer

to reasonably accommodate an employee's known disability, unless

_____

[4] The Court addresses Plaintiff's NYSHRL claims in conjunction with
her ADA claims, because the standards of liability under the two
statutes are coterminous.   See Graves v. Finch Pruyn & Co., 457
F.3d 181, 183 n.3 (2d Cir. 2006) ("A claim of disability
discrimination under the New York State Human Rights Law . . . is
governed by the same legal standards as govern federal ADA
claims.").   The differences that distinguish the ADA from its New
York counterpart, such as the NYSHRL's broader definition of
disability or its longer statute of limitations, are irrelevant to
the issues in this case.   See Williams v. Geiger, 447 F. Supp. 3d
68. 88 (S.D.N.Y. 2020) (declining to exercise supplemental
jurisdiction over NYSHRL claims after dismissing ADA claims
because of NYSHRL's broader definition of disability); Hernandez
v. City of New York, No. 11-CV-6644, 2015 WL 321830, at *25
(S.D.N.Y. Jan. 23, 2015) (declining to exercise supplemental
jurisdiction over NYSHRL claims after dismissing ADA claims
because of different statutes of limitations).   Thus, the values
of judicial economy, convenience, fairness, and comity support the
exercise of supplemental jurisdiction over Plaintiff's NYSHRL
claims.   Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396,
413 (S.D.N.Y. 2014) (exercising supplemental jurisdiction over the
plaintiff's NYSHRL claims after dismissing Title VII claims).

the accommodation would impose an undue hardship on the employer. Id. § 12112(b)(5)(A).  To maintain a claim under the ADA, which is subject to the burden-shifting analysis originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff-employee must show that: "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of h[er] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Noll v. Int'l Bus. Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015) (quoting McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)).

A reasonable accommodation may take many forms, including modifying an employee's job duties, McBride, 583 F.3d at 97, but to be reasonable the accommodation must be effective. Noll, 787 F.3d at 99.  While the reasonableness of an employer's accommodation is a "'fact-specific' question that often must be resolved by a factfinder," where "the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" Id. at 94 (citing Wernick v. Fed. Rsrv. Bank of N.Y., 91 F.3d 379, 385 (2d Cir. 1996)); see also Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995) ("[T]he determination of whether a particular

modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.").

        "To determine the appropriate reasonable accommodation it may be necessary for the employer to initiate an informal, interactive process" with the employee that aims to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Goonan v. Fed. Rsrv. Bank of N.Y., 916 F. Supp. 2d 470, 479-80 (S.D.N.Y. 2013) (alterations omitted) (quoting 29 C.F.R. § 1630.2(o)(3)); see also Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008) ("We have held that the ADA contemplates that employers will engage in an 'interactive process' with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated."). An employer who engages in an interactive process with its employee will not be subject to liability under the ADA for failure to accommodate, unless the employer is responsible for a breakdown in the interactive process. Nugent v. St. Lukes-Roosevelt Hosp. Ctr., 303 F. App'x 943, 946 (2d Cir. 2008); Goonan, 916 F. Supp. 2d at 480; Thompson v. City of New York, No. 03-CV-4182, 2006 WL 2457694, at *4 (S.D.N.Y. Aug. 10, 2006) report and recommendation adopted,

2006 WL 6357978 (S.D.N.Y. Sept. 11, 2006), aff'd sub nom. Thompson
v. N.Y.C. Dep't of Prob., 348 F. App'x 643 (2d Cir. 2009); Bohen
v. Potter, No. 04-CV-1039, 2009 WL 791356, at *13 (W.D.N.Y. Mar.
23, 2009). "An employer impedes the process when: the employer
knows of the employee's disability; the employee requests
accommodations or assistance; the employer does not in good faith
assist the employee in seeking accommodations; and the employee
could have been reasonably accommodated but for the employer's
lack of good faith." Bohen, 2009 WL 791356, at *13 (citing Kratzer
v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005)).
On the other hand, "[a]n employee who is responsible for a
breakdown of [the] interactive process may not recover for a
failure to accommodate." Nugent, 303 F. App'x at 946. Courts
must deny motions for summary judgement when "presented with
conflicting facts about the provenance of a breakdown." Goonan,
916 F. Supp. 2d at 480 (citing Bohen, 2009 WL 791356, at *14).

> ## 2. Application

Defendants argue they offered Plaintiff a reasonable
accommodation, but "not the accommodation Plaintiff wanted."
(Defs. Br. at 15-16.) The Court agrees. The undisputed record
shows Defendants granted Plaintiff the precise accommodation
prescribed by her doctors; this was "plainly reasonably." Noll,
787 F.3d at 94. While Plaintiff may have preferred a different
accommodation, "employers are not required to provide a perfect

accommodation or the very accommodation most strongly preferred by the employee." Id. at 95 (citing 29 C.F.R. § 1630 app'x); see also Fink v. N.Y.C. Dep't of Personnel, 53 F.3d 565, 567 (2d Cir. 1997). Rather, the accommodation must be effective, and this Court will not override the opinion of Plaintiff's physician as to the nature of the accommodations required for his patient. See Wenc v. New London Bd. of Educ., No. 14-CV-0840, 2016 WL 4410061, at *14 (D. Conn. Aug. 16, 2016), aff'd, 702 F. App'x 27 (2d Cir. 2017) (summary order). In short, Plaintiff fails to make a showing sufficient to establish Defendants did not offer her a reasonable accommodation, an element essential to her claim for liability under the ADA.

A review of the timeline of events supports the Court's conclusion. When Plaintiff returned to work after her accident, she informed Carroll that she was unable to archive files, which were piling up.[5] In response, Carroll conferred with Heilig and then requested information from Plaintiff that could help Defendants identify Plaintiff's limitations. Plaintiff provided

---

[5] Defendants appear to suggest that Plaintiff did not request an accommodation until her January 14 correspondence with Stankewicz. (Pl. 56.1 Resp. ¶ 95.) That characterization of the facts is not supported by caselaw in this Circuit, which recognizes an employer may be obligated to provide a reasonable accommodation when it perceives an employee is disabled, whether or not the employee asked for an accommodation. See, e.g., Brady, 531 F.3d at 135-36. Thus, the Court recognizes Plaintiff first requested an accommodation when she emailed Carroll in December 2013 regarding her limitations.

Carroll some of the requested information, i.e., the King Note. Carroll followed up with an archiving-specific question to better understand the process involved and how Defendants could accommodate Plaintiff's request.  This exemplifies the interactive process the ADA envisions.

The parties dispute what then transpired between Plaintiff and Carroll on January 7, 2014, when Carroll approached Plaintiff about her archiving responsibilities.  Plaintiff argues that the January 7 encounter demonstrates that Defendants failed to abide by the proposed accommodation to limit Plaintiff's archiving responsibilities to files weighing less than five pounds, consistent with her doctors' notes.  (Pl. 56.1 Resp. ¶¶ 105-06 (disputing Defendants' offer to limit Plaintiff's archiving responsibilities to files weighing less than five pounds as "not actually the practice" because "Defendant Carroll did make her lift heavy objects over 5 pounds").)  But the Court finds this dispute does not preclude summary judgment for the following reasons.

First, while Plaintiff claims that Carroll forced her to archive files that weighed more than five pounds, in contravention of the King Note limitations, Plaintiff has not supported this claim with competent evidence.  Of course, defendants who fail to honor and abide by a granted accommodation effectually refuse to accommodate the plaintiff, and on such facts summary judgment for

the employer would not be appropriate.  See Lambert v. Trump Int'l Hotel & Tower, 304 F. Supp. 3d 405, 422 (S.D.N.Y. 2018) (stating that employer is entitled to summary judgment if it has offered to or taken measures to accommodate plaintiff-employee's disability where the undisputed record shows the accommodation is "plainly reasonable," and plaintiff-employee's suggestion defendant-employer failed to honor the accommodation was "belied by his sworn testimony"); Wells v. Achievement Network, No. 18-CV-6588, 2021 WL 810220, at *16 (S.D.N.Y. Mar. 2, 2021); Payne v. Cornell Univ., No. 18-CV-1442, 2021 WL 39684, at *17 (N.D.N.Y. Jan. 5, 2021). However, Plaintiff fails to support such a claim with evidence in the record, as the foregoing cases require.  E.g., Wells, 2021 WL 810220, at *16 (finding plaintiff-employee failed to support allegation that defendant-employer did not abide by plainly reasonable accommodation, especially where defendants put forth sworn testimony and documentary evidence to the contrary).  At most, Plaintiff cites to her own deposition testimony to show Carroll forced her to archive files weighing more than five pounds. (Pl. 56.1 Resp. ¶¶ 105-06 (citing Plaintiff's deposition testimony).)  "At the summary judgment stage, however, many courts have deemed it necessary to cite to more than one's own deposition testimony to create a genuine dispute of fact."  Caria v. Metro-North Commuter R.R., 457 F. Supp. 3d 301, 312 (S.D.N.Y. 2020) (citing cases).

In any event, here, Plaintiff's testimony on this point is inconsistent.  Cf. Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 806 (1999) (observing "virtual unanimity" among lower courts that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity").  For example, Plaintiff testified at her deposition that Carroll acknowledged the five-pound limitation during the January 7 encounter.  (Pl. Depo. Tr. at 66:14-20; 67:25-68:7; see also Pl. Opp. at 3.)  Indeed, Plaintiff does not dispute that Carrol "indicated to Plaintiff that he was aware of the five-pound limitation and advised her not to lift anything more than that weight," and that "if she thought that anything was heavy, she was not to touch it."  (Pl. 56.1 Resp. ¶ 82).  Rather, Plaintiff asserts Carroll "told her to put the box on the floor, bend over to pick up the files, enter the information into the computer, from a sitting position, and put the files in the box," at which point Carroll or someone else would move the boxes for Plaintiff.  (Id.)  Nothing in this instruction violates the five-pound limitation, which Plaintiff concedes Carroll acknowledged.  Indeed, Plaintiff does not dispute that Carroll weighed the files Plaintiff had archived on January 7 to "confirm that none of the[m] weighed over five pounds."  (Pl. 56.1 Resp. ¶ 121.)

Second, the summary judgement record does not support the conclusion that Carroll's conduct on January 7 caused a breakdown in the interactive process, thus giving rise to ADA liability, because the undisputed facts show Plaintiff tendered several follow-up requests for an accommodation that Defendants promptly granted, thereby undermining any claim of an "objectively reasonable perception that the process [was] clearly at an end." Goonan v. Fed. Rsrv. Bank of N.Y., No. 12-CV-3859, 2014 WL 3610990, at *7-8 (S.D.N.Y. July 22, 2014) (indicating as examples of ending the ADA interactive process (1) repeated denials of a request at several levels of a defendants' corporate hierarchy and (2) statements that defendant was "not going to change its mind") (quoting Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 739 (5th Cir. 1999)). Unlike the defendant's managers in Goonan, here, Defendants' human resources and risk management personnel did not deny Plaintiff's requests; they simply referred Plaintiff to Carroll, who granted her an accommodation consistent with her doctors' notes within two days' time. And "even if [Carroll's] statements [in response to Plaintiff's request for accommodation] might be found to have evinced a degree of hostility towards [her]," Plaintiff admits that after the exchange with Carroll she "continued to seek an accommodation from [Stankewicz, Defendants'] Director of Human Resources." Gingold v. Bon Secours Charity Health Sys., 768 F. Supp. 2d 537, 544, 546 (S.D.N.Y. 2011)

(concluding the plaintiff "unilaterally and prematurely terminated the reasonable accommodation process" when he (1) pursued an accommodation with human resources after being informed by his supervisor that the defendant would not accommodate his disability, and (2) resigned before the defendant's human resources personnel could investigate his request). Moreover, it is undisputed that, after Plaintiff formally requested an accommodation on January 14, Plaintiff left work on January 15 "with no intention of going back." Thus, similar to the facts in Gingold, under these circumstances, no reasonable jury could find that Defendants, rather than Plaintiff herself, terminated the interactive process for discussing accommodations. See id.; see also Nugent, 303 F. App'x at 946.

To be certain, to the extent Defendants suggest that when Carroll spoke to Plaintiff on January 7, Defendants already had granted Plaintiff's request for a reasonable accommodation, consistent with the King Note limitations, the Court is unpersuaded. The undisputed facts do not indicate Defendants communicated this accommodation to Plaintiff, even if Carroll and Heilig understood the accommodation to have been provided. Thus, when Carroll encountered Plaintiff on January 7, Defendants had not granted Plaintiff an accommodation. See E.E.O.C. v. Yellow Freight Sys., Inc., No. 98-CV-2270, 2002 WL 31011859, at *22 (S.D.N.Y. Sept. 9, 2002) (concluding employer's purported offer

22

could not be considered a reasonable accommodation where there was no evidence at trial the employer ever made the offer to the plaintiff).[6] However, a little more than a week later and only two days after Plaintiff submitted a renewed request, Defendants extended Plaintiff an accommodation, as shown in the Heilig Memo. Plaintiff admits she received the Heilig Memo but disputes whether it granted her a reasonable accommodation. "In cases where a plaintiff claims she was offered or given an unreasonable alternative accommodation, the court looks to the alternative accommodation to determine whether it was plainly reasonable." Durick v. N.Y.C. Dep't of Educ., 202 F. Supp. 3d 277, 292 (E.D.N.Y. 2016). "If the accommodation proposed by defendants was reasonable, then, defendants may not be held liable under the ADA, since plaintiff has no right to insist on her own preferred accommodation instead." Bielski v. Green, 674 F. Supp. 2d 414, 424 (W.D.N.Y. 2009).

In this instance, as the Heilig Memo demonstrates, Defendants granted Plaintiff a plainly reasonable accommodation that was consistent with her doctors' notes. Wenc v. New London

---

[6] While Plaintiff does not raise the argument, the Court finds that any delay in granting Plaintiff an accommodation does not constitute disability-based discrimination, because any delay was the product of "mere negligence," not "motivated by the employer's discriminatory intent." Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 260 (S.D.N.Y. 2015) (quoting Logan v. Matveevskii, 57 F. Supp. 3d 234, 258 (S.D.N.Y. 2014) (collecting cases)).

Bd. of Educ., 702 F. App'x 27, 30-31 (2d Cir. 2017) (summary order) (affirming district court's conclusion that the defendants' provision of an accommodation that was consistent with the recommendation of a neutral physician was plainly reasonable). Plaintiff's spine surgeon advised Plaintiff was "unable to lift, bend, twist, or push any object over five pounds." (Second Accommodation Request, Ex. G; see also King Note, Ex. F ("no lifting over 5 pounds; no bending, pushing exercises").) Per the Heilig Memo, Defendants granted Plaintiff that accommodation, advising she was not to "'lift, bend, twist or push any object over five pounds' and if you believe any file you had to 'lift, bend, twist or push' in connection with your job function weighs in excess of five pounds you are not to touch that file." (Heilig Memo, Ex. H.)   Because this accommodation adhered to the five-pound limitation prescribed in Plaintiff's doctors' notes, it was plainly reasonable.   See Bielski, 674 F. Supp. at 426 (finding accommodations that were consistent with "the medical evidence and opinions of the physicians who treated and examined plaintiff" were plainly reasonable, notwithstanding the plaintiff's insistence on a preferred accommodation).   While Plaintiff may have preferred a different accommodation -- namely, relief from all archiving responsibilities -- "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." Noll, 787 F.2d at 95.   "All

that is required is effectiveness." Id. In this case, the Court finds Defendants' accommodation was effective since it embodied the limitations prescribed in Plaintiff's doctors' notes.

Finally, as the Second Circuit has recognized under separate provisions of the ADA, "the ADA does not impose a civility code." Krist v. Kolombos Restaurant Inc., 688 F.3d 89, 97 (2d Cir. 2012) (rejecting contention that Title III of the ADA imposes a civility code); Camarillo v. Carrols Corp., 518 F.3d 153, 157 (2d Cir. 2008) (vacating dismissal order of plausible Title III denial-of-service claim, while "not disagree[ing] . . . that legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities"). Thus, even assuming Carroll yelled at Plaintiff and mistreated her on January 7, viewing the facts in the light most favorable to Plaintiff as the non-moving party, summary judgment is appropriate because Defendants offered Plaintiff the accommodation her doctors prescribed. As a result, the parties' remaining disputes as to what happened that day -- i.e., the manner in which Carroll addressed Plaintiff; whether Carroll approached Plaintiff alone or with Assistant DA Hornig; or whether Carroll's proposal to transfer Plaintiff was an "ultimatum" or good faith offer to a disgruntled employee -- are immaterial.

Plaintiff advances a few additional arguments, all of which are unavailing. Plaintiff contends that the five-pound limitation prescribed by her doctors was distinct from the "lift, bend, twist, or push" limitation. She also takes issue with the final paragraph of the Heilig Memo, which advised Plaintiff that, in the event she was unable to perform her job responsibilities, even with the accommodation, she would have to take medical leave. However, "the interactive process is a two-way street." Dillard v. City of Austin, 837 F.3d 557, 563 (5th Cir. 2016). Thus, to the extent there was any ambiguity as to what her doctors recommended, the proper course was for Plaintiff to raise that issue with Defendants during the interactive process. Instead, Plaintiff abandoned that process without clarifying Defendants' proposed accommodation, as noted supra. The same reasoning applies to the final paragraph in the Heilig Memo: if Plaintiff did not understand the terms of the accommodation, then she had an obligation to seek clarification. See Nugent, 303 F. App'x at 946 (holding plaintiff-employee responsible for breakdown of interactive process where defendant-employer signaled receptiveness to her proposed accommodation but plaintiff-employee "failed to follow up"). But by the time she received the Heilig Memo, Plaintiff had resolved to take medical leave. Further, the parties dispute whether archiving is an essential function of Plaintiff's job as a Clerk Typist. However, "the plain

reasonableness of the existing accommodation ends the analysis." Noll, 787 F.3d at 94.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's ADA and NYSHRL discrimination claims is GRANTED, and Plaintiff's ADA and NYSHRL discrimination claims, which are governed by the same standard, see Noll, 787 F.3d at 94, are DISMISSED.

B.   ADA Retaliation[7]

To make out a prima facie claim of retaliation, the plaintiff must show that (1) she engaged in ADA-protected activity (2) of which defendants were aware, (3) she was subjected to an adverse employment action, and (4) a causal connection existed between the adverse employment action and her protected activity. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Defendants then must proffer a non-discriminatory rationale for the challenged action, whereupon the burden shifts back to the plaintiff to show that defendants' rationale is pretextual. See id. at 721; see also Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 89 (2d Cir. 2010).

---

[7] Again, the Court addresses Plaintiff's NYSHRL retaliation claims in conjunction with her ADA retaliation claim, because the standards of liability under the two statutes are coterminous. See Caputo v. Copiague Union Free Sch. Dist., 218 F. Supp. 3d 186, 194 (E.D.N.Y. 2016) (applying Title VII retaliation standard to ADA and NYSHRL claims).

Defendants do not contest that Plaintiff's requests for accommodation are protected activities.  See Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758, 2014 WL 917198, at *11 (E.D.N.Y. Mar. 10, 2014) ("Requests for disability accommodation and complaints, whether formal or informal, about working conditions related to one's alleged disability are protected activities.").  Nor do they dispute the second and third elements of a prima facie retaliation case.  Rather, Defendants maintain that there is no causal connection between any protected activities and the adverse action of Plaintiff's termination, which occurred one year after her absence on medical leave.  (Defs. Br. at 21.)

"Contrary to Defendants' assertion, however, Plaintiff's termination is not the only potential adverse employment action for purposes of her retaliation claim."  Wagner v. County of Nassau, No. 11-CV-1613, 2014 WL 3489747, at *8 (E.D.N.Y. July 11, 2014) (Seybert, J.).  Rather, "the key inquiry is whether the effect of defendants' decision was 'materially adverse,' i.e., 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Ragusa, 381 F. App'x at 90 (quoting Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (alterations in original)).  Similar to this Court's analysis in Wagner, the Court focuses its analysis on Plaintiff's claim that "Defendants retaliated against [Plaintiff] by forcing her to take leave . . . ."  (Pl. Opp. at 15); see also

Wagner, 2014 WL 3489747, at *9 ("[I]nvoluntary leave or unjustified charging of sick days can be a sufficient adverse action." (citations omitted)).

However, the undisputed record does not support the argument that Plaintiff was forced to take medical leave. In essence, Plaintiff argues that because she preferred a different accommodation -- relief from all archiving responsibilities -- her decision to go on leave when Defendants declined to extend that accommodation was forced. But as noted supra, an employer has discretion to choose a reasonable accommodation for its disabled employees, and the proposed accommodation based on Plaintiff's doctors' notes was plainly reasonable here. Fink, 53 F.3d at 567; Noll, 787 F.2d at 95. As a result, the accommodation does not constitute an adverse employment action because it did not disadvantage Plaintiff in a materially significant way. Wenc, 2016 WL 4410061, at *17 (finding plaintiff could not show he suffered an adverse employment action to survive summary judgment on his ADA retaliation claim based on arguments that the defendants, who offered the plaintiff reasonable accommodations, had forced him to take medical leave). Plaintiff "confuses the allegedly discriminatory action of failing to accommodate [her] disability with retaliation for seeking an accommodation." Id.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's ADA and NYSHRL retaliation claims is GRANTED, and

Plaintiff's ADA and NYSHRL retaliation claims, which are governed by the same standard, are DISMISSED.[8]

C.   Section 1983

Plaintiff's Section 1983 claim for Monell liability fares no better.  In her Amended Complaint, Plaintiff block quotes Section 1983 and states simply that "Defendants denied Plaintiff her rights under [the ADA]."  (Am. Compl. ¶¶ 88-89.)  Four years into this litigation, it remains unclear what theory of Monell liability Plaintiff advances.  However, reviewing the parties' briefing, the Court construes Plaintiff as asserting a claim for Monell liability based on Defendants' alleged failure to accommodate Plaintiff.  (See Pl. Opp. at 16 (arguing "Defendants' failure to accommodate Plaintiff was the product of an established policy or custom").)[9]  But "[t]o the extent that [Plaintiff] also asserts claims under § 1983 to vindicate h[er] ADA rights, those

---

[8] Moreover, summary judgment on Plaintiff's aiding and abetting claim under the NYSHRL is appropriate, because the predicate to imposing individual aider and abettor liability is impermissible discrimination.  Boonmalert v. City of New York, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order) ("Since there is no underlying NYSHRL . . . violation, there was no aiding or abetting of acts forbidden by the NYSHRL.").

[9] While Plaintiff's Section 1983 claim is asserted against all Defendants, in her opposition, Plaintiff confines her arguments to the County, and therefore a Monell theory of liability.  As a result, Plaintiff has waived the argument that Carroll or Heilig are liable under Section 1983 for failing to accommodate Plaintiff.  See Stryker Sheet Metal II Corp. v. Harleysville Ins. Co., No. 16-CV-05916, 2018 WL 654445, at *11 (E.D.N.Y. Jan. 31, 2018).

claims should be dismissed as [s]he has not shown an underlying violation of the ADA." Wiltz v. New York Univ., No. 18-CV-0123, 2019 WL 721658, at *11 (S.D.N.Y. Feb. 1, 2019), report and recommendation adopted, 2019 WL 720700 (S.D.N.Y. Feb. 19, 2019); see also E.H. v. Bd. of Educ., No. 05-CV-0972, 2008 WL 3930028, at *14 (N.D.N.Y. Aug. 21, 2008) (dismissing Section 1983 claim premised on ADA violations where the plaintiff failed to state ADA claim).

Even if the Court were to conclude that Plaintiff's reasonable accommodation claim under the ADA survived summary judgment, it would still grant summary judgment as to her Monell claim. It is well established that a municipality such as the County cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). Rather, "[w]hen a defendant sued for discrimination under §§ 1981 or 1983 is a municipality, 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.'" Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (quoting Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004)). The plaintiff can satisfy the municipal policy requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making

> authority; (3) a practice so persistent and
> widespread that it constitutes a custom
> through which constructive notice is imposed
> upon policymakers; or (4) a failure by
> policymakers to properly train or supervise
> their subordinates, such that the policymakers
> exercised 'deliberate indifference' to the
> rights of the plaintiff.

Ying Li v. City of New York, 246 F. Supp. 3d 578, 636 (E.D.N.Y.
2017) (citing Second Circuit decisions).

Plaintiff attempts to satisfy the municipal policy
requirement by showing a formal policy officially endorsed by the
County or a widespread practice or custom. (See Pl. Opp. at 16.)
"To demonstrate a de facto policy or custom through a widespread
practice, a plaintiff must 'show that the policymaker was aware of
a subordinate's unconstitutional actions, and consciously chose to
ignore them, effectively ratifying the actions.'" Buari v. City
of New York, No. 18-CV-12299, 2021 WL 1198371, at *22 (S.D.N.Y.
Mar. 30, 2021) (quoting Amnesty America v. Town of West Hartford,
361 F.3d 113, 126 (2d Cir. 2004)). To do so, the plaintiff can
"cit[e] to complaints in other cases that contain similar
allegations," provided those complaints "involve factually similar
misconduct, [are] contemporaneous to the misconduct at issue in
the plaintiff's case, and result in an adjudication of liability."
Jackson v. Nassau County, No. 18-CV-3007, 2021 WL 3207168, at *17
(E.D.N.Y. July 28, 2021) (quoting Buari, 2021 WL 1198371, at *22).
Here, Plaintiff has not adduced evidence developed through

discovery of similar lawsuits, grievances, or complaints against the County for failing to accommodate individuals with disabilities. Without such information, the Court is unable to conclude that failing to accommodate disabled individuals, as required under the ADA, is a practice "so widespread as to have the force of law." Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) ("[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'") (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)). "Although Plaintiff alleges that policymakers 'tolerated' a policy or custom of [ADA] violations, [s]he provides no examples beyond what occurred in h[er] own case, which is insufficient." Paulin v. City of Beacon, No. 17-CV-5105, 2019 WL 4274211, at *7 (S.D.N.Y. Sept. 10, 2019). Thus, Plaintiff's widespread practice or custom theory fails.

Nor can Plaintiff's Monell claim proceed under a formal policy theory. In support of this theory, Plaintiff relies on Defendants' statements that the County does not offer light duty, including in the final paragraph of the Heilig Memo. (See Defs. 56.1 Resp. (arguing final paragraph "represented there was a

systematic, custom, policy and/or practice, that routinely denied Defendant County's disabled employees of rights afforded to them under the federal law").)  However, the Court disagrees that this paragraph demonstrates a formal policy of discrimination under the ADA, because the policy was not "officially endorsed" by the County.  To the contrary, Plaintiff concedes that this was not County policy, as the County Director of Labor Relations testified. (Pl. 56.1 Resp. ¶ 95.)

Accordingly, Defendants' motion for summary judgment as to Plaintiff's Section 1983 claim is GRANTED, and Plaintiff's Section 1983 claim is DISMISSED.

## CONCLUSION

For the stated reasons, Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  19 , 2021
       Central Islip, New York

34