FILED
CLERK

7/22/2026 3:26 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
KIM L. TAFOLLA,

                    Plaintiff,

    -against-

EDWARD HEILIG, DIVISION CHIEF;
JOSEPH CARROLL; and COUNTY OF
SUFFOLK,
               Defendants.
-------------------------------X

                              ORDER
                              17-CV-4897(JS)(AYS)

APPEARANCES
For Plaintiff:     Joshua Friedman, Esq.
                   Phillips & Associates, Attorneys at Law, PLLC
                   45 Broadway, 28th Floor
                   New York, New York 10006

For Defendants:    Helen M. Benzie, Esq.
                   Law Office of Vincent D. McNamara
                   Tower Square, 1045 Oyster Bay Road, Suite 1
                   East Norwich, New York 11732

SEYBERT, District Judge:

        Presently before the Court are: (1) the Motion to Set Aside Mistrial filed by Plaintiff Kim Tafolla ("Plaintiff"), and (2) the Motion for Judgment as a Matter of Law filed by the County of Suffolk (the "County"), Joseph Carroll ("Carroll"), and Edward Heilig ("Heilig," collectively with the County and Carroll, the "Defendants," with Carroll, the "Individual Defendants").  (See Pl.'s Motion, ECF No. 160; Defs.' Motion, ECF No. 159; Defs.' Support Memo, ECF No. 159-28; Defs.' Opp'n., ECF No. 163; Pl.'s Opp'n, ECF No. 164; Defs.' Reply, ECF No. 165; Pl.'s Reply, ECF

1

No. 166.) Because Plaintiff has not established a basis to set aside the mistrial, her Motion is DENIED. Defendants' Motion has also failed to establish a basis for a judgment as a matter of law and is DENIED, except to the extent it seeks dismissal of Plaintiff's NYSHRL retaliation claims.

## BACKGROUND

I.  FACTS

a. The Trial and the Initial Verdict Sheet

The Court assumes the Parties' familiarity with the factual background giving rise to this employment discrimination action (the "Action"). See generally Tafolla v. Heilig, 80 F.4th 111 (2d Cir. 2023). However, for context and convenience, the Court briefly reiterates the relevant facts:

> Plaintiff was a Clerk Typist in the Suffolk County District Attorney's Office (the "District Attorney's Office") from 2008 until her termination in 2015. Tafolla, 80 F.4th at 114. Her position involved "'general office duties,' including answering calls, typing various legal documents, [] photocopying," and, to a disputed extent, archiving. Id. at 115. On November 25, 2013, Plaintiff "suffered a spine injury when her vehicle was rear-ended at a stoplight" (hereinafter, the "Accident"). Id.; (Pl.'s Support Memo at 1.) On December 6, 2013, Plaintiff asked Carroll, her supervisor, whether another employee could temporarily perform her archiving responsibilities due to her Accident-related soreness (hereinafter, the "First Request"). Id. On December 10, 2013, after Carroll asked Plaintiff for a doctor's note detailing her relevant restrictions, Plaintiff provided a

2

note [from physician assistant Eugene King] instructing "on separate lines, '[n]o lifting over 5 pounds, - [n]o bending, pushing exercises' and that Tafolla would be revaluated in two months.'" Id. (citation omitted).

Plaintiff alleges Carroll did not react to the First Request until January 7, 2014, when he had an assistant district attorney ask Plaintiff about unarchived files. Id. at 115. After Plaintiff told Carroll she could not physically archive due to her injury, Carroll asserted the First Request restricted her only from lifting more than five pounds. Id. at 115-16. According to Plaintiff, Carroll warned her that failure to archive could result in transfer or disability leave. Id. at 116. Plaintiff subsequently performed some archiving, despite the pain. Id. On January 8, Plaintiff "called in sick and had an appointment with her spine surgeon, Dr. Robert M. Galler" ("Dr. Galler"), who issued a doctor's note stating Plaintiff was "was 'unable to lift, bend, twist, or push any object over five pounds' and that she was 'able to perform secretarial work but no physical duties at this time.'" Id. When Plaintiff "returned to work on January 9, there were files piled in front of her desk." Id.

On January 14, Plaintiff made a second accommodation request to Human Resources, which affixed Dr. Galler's letter (hereinafter, the "Second Request"). Id. A Human Resources representative responded by telling Plaintiff the County did not offer light-duty assignments and added any accommodation was at Carroll's discretion. Id. Later that day, an employee from the District Attorney's Office's Risk Management department also told Plaintiff the County did not offer light-duty assignments. Id. On January 15, Plaintiff reported to work and was asked to archive once more, leading her to believe the Second Request had been denied. Id. at 117. On January 16, Heilig responded

3

> to the Second Request via a memorandum (hereinafter, the "Heilig Memo"), which asserted the First Request had been accommodated by limiting Plaintiff from lifting files over five pounds and that the County did not have light duty assignments. Id. Plaintiff interpreted the Heilig Memo as the denial of the Second Request. Id. The Heilig Memo further explained, if Plaintiff could not archive without restriction, she would need to take medical leave. Id. Plaintiff subsequently left work, took disability leave, and was terminated in 2015. Id.

Tafolla v. Heilig, No. 17-CV-4897, 2026 WL 697047, at *2 (E.D.N.Y. Mar. 12, 2026).

From April 6 through April 10, 2026, this Court held a jury trial in the Action on Plaintiff's Americans with Disabilities Act ("ADA") and New York State Human Rights Law ("NYSHRL") claims. (See Jury Charge, ECF No. 164-30, attached to Pl.'s Opp'n.) Plaintiff uses both statutes to allege Defendants (1) rejected her reasonable accommodation request (the "Accommodation Claims"), and (2) retaliated against her for seeking the accommodation (the "Retaliation Claims"). (Id.)

On the evening of April 8, 2026, after the close of evidence and before summations, the Court circulated a proposed jury charge and verdict sheet. (Pl.'s Motion at 6 (citing April 9 Trial Tr., ECF No. 159-5, at 513-16, attached to Defs.' Motion).) On April 9, 2026, the Court held a formal charge conference, during which it invited both sides to raise objections to the Court's

4

proposed charge and verdict sheet.  (Id.) Following the conference, the Court largely retained its proposed verdict sheet but adopted Defendants' proposed language regarding Plaintiff's Accommodation Claims.  (Initial Verdict Sheet, ECF No. 159-7, attached to Defs.' Motion.)  The accommodation request questions on the Initial Verdict Sheet, which were designed to track the necessary elements of the Accommodation Claims[1], provided as follows:

> 1. Has Ms. Tafolla proven by a preponderance of the evidence that:
>
>    a. She requested a reasonable accommodation to which she was entitled under the ADA?
>
>       Yes _____      No _____
>
>    b. The County of Suffolk refused to provide her with a reasonable accommodation under the ADA?
>
>       Yes _____      No _____
>
> 2. Has Ms. Tafolla proven by a preponderance of the evidence that:

---

[1] See Tafolla, 80 F.4th at 118 (for a failure-to-accommodate claim, plaintiff must establish she is (1) "a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations" (quoting McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009))); see also Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] . . .  is governed by the same legal standards as govern federal ADA claims.").

a. She requested a reasonable accommodation to which she was entitled under the NYSHRL?

Yes _____        No _____

b. the below named Defendants refused to provide her with a reasonable accommodation under the NYSHRL?

1. County of Suffolk?

Yes _____        No _____

2. Edward Heilig?

Yes _____        No _____

3. Joseph Carroll?

Yes _____        No _____

***If you answer "yes" to any part of questions 1 or 2, proceed to question 3.*** *If you answer "no" to all parts of questions 1 or 2 skip question 3 and proceed to question 5.*

(Id. (emphasis added).) The emphasized portion of the directional (the "Errant Directional") was legally incorrect, as it instructed the jury to continue to assess damages for the Accommodation Claim even if it found that one of the required prima facie elements of an Accommodation Claim had not been established. Neither party objected to the Errant Directional before the jury retired to deliberate. (April 9 Trial Tr. at 618-19.)

6

b. <u>The Initial Verdict</u>

On April 9, 2026, the jury returned its verdict after approximately three hours of deliberation. (April 9 Trial Tr. at 620.) The jury found Plaintiff: had requested a reasonable accommodation, but that Defendants did not refuse any accommodation request. (See Initial Verdict Sheet.) Although the necessary refusal-of-accommodation element (the "Refusal Element") was not found, the jury nonetheless awarded Plaintiff $400,000, comprised of $200,000 in back pay and emotional distress damages respectively. (<u>Id.</u>) The jury also answered "no" on the Initial Verdict Sheet's relevant Retaliation Claim questions. (<u>Id.</u>)

After the verdict was announced, the Court discharged the jury but asked the jurors to remain briefly so it could speak with them about the trial process before they left the courthouse. (April 9 Trial Tr. at 627:4-14.) Once the jury left the courtroom, the Court asked counsel whether they had any motions. (<u>Id.</u> at 627:16-17.) Plaintiff had no motions; Defendants' counsel stated she needed to consult with her client and requested the deadline for post-trial motions be set for 28 days after entry of judgment. (<u>Id.</u> at 627:16-628:13.)

While the jurors were still in the jury room, but before the Court proceeded to speak with the jury about the trial process, the Court recognized the Errant Directional and the jury's

7

inconsistent ruling; neither party raised the issue.  Therefore, outside of the jury's presence, the Court explained to counsel that the Errant Directional failed to account for how the subparts of Questions 1 and 2 interacted before the jury could properly reach the damages questions.  (April 9 Trial Tr. 630:1-632:21.) Therefore, the Court advised counsel that it would recall the jury and furnish a revised verdict sheet.  (Id.) The Court then recalled the jury to resume deliberations.  (Id. at 641-43.)

On the morning of April 10, 2026, the jury was provided with a revised, final verdict sheet.  (Final Verdict Sheet, ECF No. 156.) The Final Verdict Sheet instructed the jury to proceed to Question 3 only if it answered "Yes" to both Questions 1(a) and 1(b), or to Question 2(a) and any portion of Question 2(b).  (Id.) The jury deliberated throughout much of the rest of the day but ultimately informed the Court it had reached an impasse, after which a mistrial was declared.[2]  (April 10, 2026 Minute Entry, ECF No. 152.)

II.  The Motions

On June 5, 2026, the parties filed their post-trial motions. (See Pl.'s Motion; Defs.' Support Memo.) At a high level, both parties seek to claim victory using the Initial Verdict Sheet.

---

[2] The Court also posed special interrogatories to the jury, made at Plaintiff's request.  See April 10, 2026 Minute Entry.

Plaintiff believes Initial Verdict Sheet's $400,000 award evinces juror intent to find Defendants liable, whereas Defendants argue the jury's Refusal Element finding is tantamount to a "no liability finding."  (Pl.'s Motion at 1; Defs.' Support Memo at 3.)

a. Plaintiff's Motion

Plaintiff advances two principal arguments.  First, she contends Defendants failed to timely object to the Initial Verdict Sheet and, as a result, the $400,000 judgment should stand as operative.  (Pl.'s Motion at 1-3.) Second, Plaintiff contends the Initial Verdict Sheet offered legally correct instructions, which led to a reconcilable and consistent verdict supported by the evidence.  (Id. at 9-11, 16-17.) According to Plaintiff, the jury's view may have been that Plaintiff's First Request was granted in December 2013, when she was excused from archiving for about one month, but nonetheless awarded damages based upon Defendants' actions after January 7, 2014, which included: a confrontive conversation between Carroll and Plaintiff; Plaintiff conducting additional archiving in January 2014, and the issuance of the Heilig Memorandum.  (Id. at 18-21.)

b. Defendants' Motion

Because the jury answered the Refusal Element questions in the negative, Defendants argue the Initial Verdict Sheet reflects a "no liability" finding.  (Defs.' Support Memo at 9-10.) In addition to seeking a judgment as a matter of law under Rule 50

of the Federal Rules of Civil Procedure, on weight-of-the-evidence grounds, Defendants alternatively contend the Court should amend the Initial Verdict Sheet by deleting the damages award pursuant to its power under Rules 59(e), 60(a), and 60(b) of the Federal Rules of Civil Procedure. (Id. at 9-10, 18-20.) Separately, Defendants contend the NYSHRL Retaliation Claim cannot stand as a matter of law because New York state courts do not recognize accommodation requests as a "protected activity" under the law. (Id. at 2, 12-14.)

## DISCUSSION

The Court addresses each argument individually, starting with Plaintiff's Motion.

### I. Plaintiff's Motion

#### a. Plaintiff's Waiver Argument is Unavailing Because the Court Unilaterally Addressed the Initial Verdict Sheet

Plaintiff contends Defendants waived any right to object to the Initial Verdict Sheet, as they did not raise any consistency issues before the jury was discharged. (Pl.'s Motion at 1, 4-7.) Plaintiff also argues Defendants' proposed verdict sheet did not include the directional language at issue. (Id. at 7-8; see also Defs.' Proposed Verdict Sheet, ECF No. 159-11, attached to Defs.' Motion.) Finally, Plaintiff asserts the jury had already been discharged before the Court recognized the Errant Directional, after which Defendants could no longer file an objection. (Id. at

10

4-7.) In their Opposition, Defendants argue the Court properly exercised its authority to recall the jury and direct further deliberations. (Defs.' Opp'n. at 6-7.)

Plaintiff is correct that, generally speaking, a party must object to an inconsistent verdict before the jury is discharged in order to preserve the issue. (Pl.'s Motion at 4-5 (citing Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 83 (2d Cir. 2006) ("[i]t is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury"); Anderson Grp. LLC v. City of Saratoga Springs, 805 F.3d 34, 49-50 (2d Cir. 2015) (finding waiver where counsel failed to contemporaneously object to an allegedly inconsistent verdict before the jury was discharged); U.S. Football League v. Nat'l Football League, 644 F. Supp. 1040, 1046 n.4 (S.D.N.Y. 1986) ("[t]o the extent [plaintiff argues] a new trial is warranted because of inconsistencies among the jury's verdicts, plaintiffs have waived their right to invoke that rule's protection by failing to raise the question of inconsistency before the jury was discharged"); see also Harrison v. Scripps Networks, Inc., No. 3:02-CV-489, 2006 WL 585423, at *3 (E.D. Tenn. Mar. 10, 2006) ("[a]t the very least, [plaintiff] was obligated to raise the [inconsistency] issue when the jury announced its verdict"); Morse v. Fusto, No. 07-CV-4793, 2013 WL 4647603, at *22 (E.D.N.Y. Aug. 29, 2013) (finding where defendants

11

"made no objection to the lack of such an instruction in the Court's proposed instructions [ . . . ] such objection is waived").) But none of Plaintiff's authorities address a situation where the <u>Court</u> raised the issue of inconsistency on its own volition. As such, this principle does not control here.

Although neither party cites it, the Supreme Court's decision in <u>Dietz v. Bouldin</u> directly addresses the Court's power to act as it did here. 579 U.S. 40, 41 (2016). In <u>Dietz</u>, the Supreme Court explained "[i]n the normal course, when a court recognizes an error in a verdict before it discharges the jury, it has the express power to give the jury a curative instruction and order them to continue deliberating." 579 U.S. 40, 41 (2016). <u>Dietz</u> involved a personal injury case where the jury initially found for plaintiff but awarded $0 in damages, despite the parties' stipulation to at least $10,136 in damages. <u>Id.</u> at 40; <u>see also</u> <u>Emamian v. Rockefeller Univ.</u>, 971 F.3d 380, 392 (2d Cir. 2020) ("[t]he Supreme Court in <u>Dietz</u> recognized the carefully delineated power of a district court to rescind a discharge order after 'identifying,' 'discover[ing],' or 'recogniz[ing]' an error in a verdict") (quoting <u>Dietz</u>, 579 U.S. at 46).

A court's power to rescind a jury discharge, however, is not unlimited. As the Second Circuit has explained:

12

> A district court's power to rescind a discharge order and recall a jury for further deliberation must be "carefully circumscribed" to ensure the absence of external influences that could taint the jury's determination. Id. at 1893. To that end, the Dietz Court directed courts to guard against "[a]ny suggestion of prejudice" by considering the following factors: (1) "the length of delay between discharge and recall"; (2) "whether the jurors have spoken to anyone about the case after discharge," including court staff; (3) "the reaction to the verdict," including whether jurors witnessed "[s]hock, gasps, crying, cheers, and yelling"; and (4) "other relevant factors," including "to what extent just-dismissed jurors accessed their smartphones or the internet."

Emamian, 971 F.3d at 393 (quoting Dietz, 579 U.S. at 50-51.). But, as long as those "suggestion of prejudice" considerations do not warrant against recall, the Second Circuit has reviewed such decisions for abuse of discretion. See Id. at 394-95 (concluding district court "did not abuse its discretion in exercising its power to rescind the discharge order and recall the jury for further deliberation").

The record does not demonstrate, and neither party argues, any factor evincing the existence of "[a]ny suggestion of prejudice." Dietz, 579 U.S. at 50. Rather, the transcript reflects a brief recess elapsed between the Court's initial discharge of the jury and its recall. (See April 9 Trial Tr. 629:12-630:21.) The record does not suggest any juror communicated with a third party or was exposed to outside influences. Nor were

13

there any "gasps, crying, cheers, [or] yelling" in the courtroom when the jury read the initial verdict.  See Dietz, 579 U.S. at 50.  Because the Court's actions satisfied the safeguards articulated in Dietz, the Court was well within its discretion to recall the jury and direct further deliberation.  Whether Defendants proposed the correct language or contemporaneously objected is beside the point, since the Court raised the Initial Verdict Sheet issue on its own.

b. The Initial Verdict Sheet is Not Reconcilable

In support of her position, Plaintiff argues the Initial Verdict Sheet correctly instructed the jury to proceed if it answered "Yes" to any portion of Questions 1 or 2.  (Pl.'s Motion at 8-9.)  According to Plaintiff, such an instruction accurately reflects "the holistic nature of the ADA's failure-to-accommodate framework," because the jury was instructed to evaluate the entire interactive process and not merely whether Defendants expressly refused an accommodation at a single point in time.  (Id. at 9.)  In other words, Plaintiff maintains the jury may have believed: Defendants did not deny Plaintiff's First Request in December 2013, as Plaintiff did not archive from December 6, 2013 through January 6, 2014, but caused a breakdown in the interactive process in January 2014, that resulted in liability and damages consistent

14

with the fact that "accommodation is a dynamic, evolving process, not a single snapshot in time."  (Id. at 9-11.)

In support of this contention, Plaintiff points to the Court's preliminary observations following the return of the Initial Verdict:

> The first question referring to the County may refer to a time period. When the plaintiff came back, she wasn't required to do archiving, and there was that period of time where the jury may say that was a reasonable accommodation. But once you get into that January 14th, 17th time frame, and she's told she has to do the archiving and the jury found that the files were piling up. They could find that that was a change and they can vote the verdict sheet the way they did. So, it's not one perfect line, everything is [not] the same every day. There is the ability to find that this verdict sheet was consistent.

(Pl.'s Br. at 3 (citing April 10 Trial Tr., ECF No. ECF No. 159-6, at 653:18-654:10, attached to Defs.' Motion).)

"Where there are seeming inconsistencies between interrogatory responses and a general verdict, a trial court should normally attempt to reconcile them."  Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 53 (2d Cir. 1992).  Upon further review, however, the Court concludes the Initial Verdict Sheet cannot be reconciled with the prima facie elements of the Accommodation Claims.  As written, the Initial Verdict Sheet permitted the jury to find, as it initially did: Plaintiff made an accommodation request; the request was not denied by the Defendants; and

15

Plaintiff was entitled to money damages despite the non-denial. However, to stand, a failure-to-accommodate cause of action requires a denial of a reasonable accommodation. See Tafolla, 80 F.4th at 118-19.

The Court likewise rejects Plaintiff's argument that, because the Initial Verdict Sheet includes money damages, the jury evinced intent to find liability. In support of her "intent" argument, Plaintiff relies upon Jay Dees Incorporated v. Defense Technology Systems Incorporated, wherein a court rejected a post-trial challenge to a punitive damages award because "the jury in this case awarded [damages], broadcasting clearly how it viewed the events and actions at issue." (Pl.'s Motion at 24 (citing 2009 WL 2432009, at *1 (S.D.N.Y. Aug. 7, 2009), aff'd in part, vacated in part sub nom. Scotto v. Brady, 410 F. App'x 355 (2d Cir. 2010)).) Jay Dees, however, did not involve an inconsistent verdict. And, unlike Jay Dees, the jury in this case was recalled to resolve the internally inconsistent verdict and subsequently deadlocked after receiving corrected instructions. The Court therefore declines to infer from the Initial Verdict Sheet that the jury intended to impose liability notwithstanding its express finding that Defendants did not deny Plaintiff a reasonable accommodation. Accordingly, Plaintiff's Motion is DENIED on all grounds.

II. Defendants' Motion

    a. Rule 50 Argument

        i. The Accommodation Claim

Defendants seek a Judgment as a Matter of Law on grounds the Initial Verdict Sheet included a "substantive determination by the jury of no liability under the ADA and NYSHRL." (Defs.' Support Memo at 9-10.) They contend the evidence was unambiguously consistent with the jury's finding that Defendants never denied Plaintiff's accommodation request. (Id. at 10-12.) As Defendants re-tell the story, Carroll responded to Plaintiff's December 6, 2013 notice of her accident within two hours, told her not to do anything that would aggravate her condition, and Plaintiff performed no archiving duties from that date until January 7, 2014. (Defs.' Support Memo at 10 (citing April 7 Trial Tr., ECF No. 159-3, at 190:25-191:23, 193:1-25, 197:4-25, attached to Defs.' Motion; see also December 2013 Tafolla-Carroll Email Thread, ECF No. 159-18, attached to Defs.' Motion).) On January 7, 2014, when Carroll had a conversation with Plaintiff, Plaintiff archived that day with the assistance of another employee; Defendants assert the employee's archiving assistance was an additional accommodation. (Defs.' Support Memo at 10-11 (citing April 7 Trial Tr. at 197:1-25; 198:1-25, attached to Defs.' Opp'n).) Defendants also emphasize Plaintiff's spinal surgeon, Dr. Galler, admitted at trial he had no independent recollection of treating Plaintiff,

17

had not reviewed his records before testifying, and conceded that excusing Plaintiff from archiving through January 7 was reasonable and that lifting three or four pounds would have been in compliance with his written instruction.  (Defs.' Support Memo at 11 (citing April 7 Trial Tr. at 29:7-35:20).) Based on these facts, Defendants maintain they did provide Plaintiff with a reasonable accommodation, and Plaintiff ended the "interactive process" by unilaterally leaving her position.  (Defs.' Support Memo at 6, 10-11.)

Defendants' Support Memo correctly observes:

> A district court may only grant a Rule 50(b) motion when 'there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair-minded [persons] could not arrive at a verdict against [it].'

(Defs.' Support Memo at 7 (quoting Ryan v. County of Nassau, No. 12-CV-5343, 2018 WL 354684, at *2 (E.D.N.Y. Jan. 10, 2018)); see also Black v. Finantra Capital, Inc., 418 F.3d 203, 209 (2d Cir. 2005) ("A court evaluating [ ] a motion [for judgment as a matter of law] cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury").

18

Although Defendants' interpretation of the record could reasonably lead a jury to reach a finding of no liability, Plaintiff's Opposition cites to contrary facts in the trial record which, persuasively, show a reasonable jury could have found for Plaintiff.  For example, Plaintiff contends Defendants never engaged in the required interactive process, observing Carroll admitted he took no action on Plaintiff's First Request for a full month.  (Pl.'s Opp'n at 3 (citing April 7 Trial Tr. at 138).) If a jury were to credit Plaintiff's testimony that Carroll was "angry and aggressive" during his January 7, 2014 meeting with her, the jury could also reasonably find for Plaintiff.  (Pl.'s Opp'n at 4 (citing April 8 Trial Tr., ECF No. 159-4, at 372:20-21, attached to Defs.' Motion).)

A jury likewise could conclude Defendants applied an unlawful "100 percent healed" policy based upon Carroll's statement that Plaintiff "has to be able to do the work or [the] alternative is to go out on disability" and the Heilig Memorandum requiring a doctor's note certifying the employee could return with "no restrictions."  (Pl.'s Opp'n at 5-7 (citing April 8 Trial Tr. at 154:1-5).) That conclusion would be further supported by the County's own Rule 30(b)(6) witness, who testified that Carroll's and Heilig's responses were, based on her read of the documents, "incorrect."  (Pl.'s Opp'n at 7-8 (citing April 8 Trial Tr. at 338:05-19).)

19

Although the Court does not endorse either party's view of the evidence, this is not a case where there could exist "a complete absence of evidence supporting the verdict" for either outcome.  Cangemi v. Town of East Hampton, 374 F.Supp.3d 227, 232 (E.D.N.Y. 2019) (further citation omitted), aff'd sub nom. Cangemi v. United States, 13 F.4th 115 (2d Cir. 2021).  A reasonable jury could certainly come out in favor of or against ADA and NYSHRL liability, based upon these facts.  Accordingly, Defendants' Motion on this point is DENIED.

### ii.  The Retaliation Claim

Although this issue would have been more appropriately raised in a motion to dismiss earlier in the litigation, Defendants are correct that the NYSHRL does not recognize a request for reasonable accommodation as protected activity for purposes of a retaliation claim.  See Konyukhova v. Walgreen Co., No. 24-CV-4390, 2026 WL 880381, at *10 (S.D.N.Y. Mar. 31, 2026) ("[u]nlike the ADA and NYCHRL, NYSHRL does not recognize a request for accommodation as a protected activity"); Medina v. AAM 15 Mgmt. LLC, 750 F. Supp. 3d 332, 346–47 (S.D.N.Y. 2024), motion to certify appeal denied, No. 21-CV-7492, 2025 WL 2658615 (S.D.N.Y. Sept. 17, 2025) (collecting cases and explaining "[t]he rationale for this rule stems from the plain language of the NYSHRL itself").  In response, Plaintiff cites to no case indicating such retaliation claims are

viable under the NYSHRL.  (Pl.'s Opp'n at 9-10 (citing Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) (citation relating to ADA retaliation claim)); Limauro v. Con. Edison Co. of N.Y., Inc., No. 20-CV-3558, 2021 WL 466952, at *10-11 (S.D.N.Y. Feb. 9, 2021) (acknowledging New York courts do not recognize accommodation requests as protected activity for NYSHRL retaliation purposes).)  Plaintiff may disagree with this interpretation or the policy underlying the interpretation, but when applying state law, federal courts must "look to the state's decisional law, as well as to its constitution and statutes." Medina, 750 F. Supp. 3d at 346 (quoting Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 497 (2d Cir. 2020)).  Because New York courts have clearly stated the NYSHRL does not view a request for accommodation, for purposes of a retaliation claim, as a protected activity.  See Medina, 750 F. Supp. 3d at 347 (collecting cases). Defendants' Motion is GRANTED to the extent the NYSHRL retaliation claims are dismissed against all Defendants.

      b. Defendants' Requested Rule 59 Relief is Not Warranted

Defendants next argue that, because the Initial Verdict Sheet did not include findings sufficient to establish liability, the Court should exercise its authority under Rules 59 and 60 of the Federal Rules of Civil Procedure to: amend the Initial Verdict Sheet; remove the money damages finding from said sheet; and enter judgment for Defendants.  (Defs.' Support Memo at 14-20.) They

contend "[t]he mistake was in the roadmap portion of the verdict sheet[,] not in the substantive liability questions[,] none of which were answered in the affirmative to support a damage verdict." (Id. at 17.) In support of this position, they cite to two cases where judgments were amended under Rule 59(e), but neither involved a situation where an inconsistent verdict was resubmitted to the jury pursuant to a Court's inherent powers. (Defs.' Support Memo at 17 (citing 4 Pillar Dynasty LLC v. New York & Co., Inc., 257 F. Supp. 3d 611 (S.D.N.Y. 2017), aff'd 4 Pillar Dynasty LLC v. New York & Co., Inc., 933 F.3d 202, 217 (2d Cir. 2019); Curtis v. Aetna Life Ins. Co., No. 19-CV-1579, 2022 WL 788490, at *3 (D. Conn. Mar. 15, 2022)).) In 4 Pillar Dynasty LLC v. New York & Company, Incorporated, the Second Circuit upheld a district court's decision to remove treble damages from a Lanham Act award because it did not comport with a statutorily-mandated treble damages standard. 4 Pillar, 933 F.3d at 216-17. And, in Curtis v. Aetna Life Insurance Company, a District of Connecticut court granted a plaintiff relief from a dismissal judgment where the plaintiff's proposed second amended complaint included non-futile amendments. Curtis, 2022 WL 788490, at *3.

Unlike in 4 Pillar and Curtis, here the Initial Verdict Sheet was not a final judgment. Here, there is no judgment to alter or amend. Moreover, the "manifest error[s] to be corrected were clearly dictated by, respectively, the requirements of the

22

Lanham Act and outcome-determinative complaint amendments.  Here, by contrast, the Initial Verdict Sheet included mixed results and an unclear intent.  It was for this reason that the Court used its inherent authority to recall the jury and re-submit the matter to the jury for further deliberation, using the Revised Verdict Sheet. Accordingly, Defendants' request for relief under Rule 59(e) is DENIED.

c. Defendants' Requested Rule 60 Relief is Not Warranted

Defendants additionally argue the Court should correct the Initial Verdict Sheet using its (1) Rule 60(a) authority to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record," (2) Rule 60(b)(1) authority to relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect," or (3) Rule 60(b)(6) authority to relieve a party from a final judgment for "any other reason that justifies relief."  (Defs.' Mot. at 18 (citing Fed. R. Civ. P. 60).) Neither Rule 60(a) nor 60(b) provides an appropriate avenue for relief under the scenario presented by the facts of this case.

Rule 60(a) permits a court to correct a judgment only to memorialize part of its original decision, reflect the necessary implications of the original order, ensure the court's purpose is fully implemented, or permit enforcement.  See L.I. Head Start

23

Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc., 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013). For example, Rule 60(a) has been used to amend a judgment that inadvertently omitted a $9,000 damages award. Id. at 411. Putting aside the fact the Initial Verdict Sheet is not a final judgment, Rule 60(a) does not provide a basis for its amendment, as doing so would not memorialize part of a decision or ensure the jury's purpose is fully implemented. This is so because it is not clear from the face of the Initial Verdict Sheet what the jury's intent was.

Nor is Rule 60(b) applicable. Although this rule allows for relief from a judgment where "mistake, inadvertence, surprise, or excusable neglect" exist, and Defendants argue the judgment should "reflect the jury's factual finding of no liability," (Defs.' Support Memo at 18-19.) once again it is unclear whether the jury factually found no liability. As the Court rejected Plaintiff's Jay Dees argument, which she advanced to support her interpretation of the Initial Verdict Sheet, it also rejects Defendants' similar argument. (cf. Pl.'s Motion at 24 (citing Jay Dees, 2009 WL 2432009, at *1).) Additionally, the Court addressed the operative mistake on the Initial Verdict Sheet when it directed the jury to continue to deliberate. See Dietz, 579 U.S. at 40. Defendants have additionally failed to provide any basis for Rule 60(b)(6)'s application to this case. As such, the "mistake" has

24

already been addressed by the Court.  Accordingly, Defendants' request for relief under Rule 60 is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that:

I.   Plaintiff's Motion to Set Aside the Mistrial is DENIED in its entirety;

II.  Defendants' Motion for Judgment as a Matter of Law is DENIED in part, and GRANTED in part, such that:

   a. Defendants' Motion as to Plaintiff's (1) ADA Accommodation and Retaliation Claims, and (2) NYSHRL Accommodation Claims is DENIED;

   b. Defendants' Motion as to Plaintiff's NYSHRL Accommodation Claims is GRANTED in part to the extent Plaintiff's NYSHRL Retaliation Claims are DISMISSED with prejudice; and

   c. Defendants' Motion as to relief under Rules 59 and 60 of the Federal Rules of Civil Procedure is DENIED.

   **SO ORDERED.**

                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated: July 22, 2026
       Central Islip, New York

25